Berner, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued May 25, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

624

*Charles E. Kenworthy,* with him *Leroy Long* and *Arthur H. James,* for appellants.

*John E. Fullerton,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, and *Harris J. Latta,* Assistant Counsel, for Public Utility Commission, appellee.

*Philip Price,* with him *Robert J. Doran, John C. Kelley,* and *Harold P. Dicke,* for intervening appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, September 26, 1955:

This is an appeal which we allowed from an order of the Superior Court (*Berner v. Pennsylvania Public Utility Commission,* 177 Pa. Superior Ct. 19, 107 A. 2d 882), affirming, by a sharply divided vote, a final order of the Pennsylvania Public Utility Commission which had approved an increase in rates requested under tariff supplements filed by the Commonwealth Telephone Company in November, 1952.

The principal issue involved concerns the nature and extent of the burden of a utility to establish in a rate case the reasonableness of its dealings with closely held affiliates. The Telephone Company and all of the affiliates whose dealings with the Company are here questioned are apparently owned or controlled, directly or indirectly, by the same individual, former Senator Sordoni. Four specific questions are raised on the appeal: (1) the propriety of the allowance by the Commission of certain payments made to affiliates for services rendered by them to the Telephone Company, in the absence of evidence clearly showing the nature and the amount of the services, the cost to the affiliates for rendering the services, and the profit made by them; (2) the propriety of the inclusion by the Commission in the rate base of a large sum for quantities of materials and supplies stockpiled for future use for expansion and in the conversion of the telephone system from manual to automatic operation, where the rate base already included the equipment which the stored materials would replace; (3) the propriety of the Commission's fixing the Company's fair rate of return at 6.8%; (4) the propriety of the Commission's finding as to the estimated annual revenues of the Company under the new rates.

The scope of appellate review of the orders of the Public Utility Commission is set forth in the Public Utility Law of May 28, 1937, P. L. 1053, section 1107, as follows: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or *lack of evidence to support the finding, determination, or order of the commission,* or violation of constitutional rights."

Section 312 of the Law provides that "In any proceeding . . . upon complaint involving any proposed increase in rates, the burden of proof to show that the

rate involved is just and reasonable shall be upon the public utility." Section 701(c) provides that "The commission shall have authority at any time to investigate every such contract [with an affiliated interest] . . ., and, if after reasonable notice and hearing, it shall determine that the amounts paid or payable thereunder are in excess of the reasonable cost of furnishing the services provided for in the contract, or that such services are not reasonably necessary and proper, it shall order such amounts, in so far as found excessive, to be stricken from the books of account of the public utility as charges to fixed capital, or operating expenses, as the case may be, and shall not consider such amounts in any proceeding. *In any proceeding involving such amounts, the burden of proof to show that such amounts are not in excess of the reasonable cost of furnishing such services, and that such services are reasonable and proper, shall be on the public utility.*" It is abundantly clear, therefore, that when, as here, a utility includes in its rate base an ascribed value of inter-affiliate transactions, whether as an item of fixed capital or of operating expense, section 701(c) imposes on the utility a twofold burden: first, to show that the inter-affiliate transaction was reasonably necessary, and, second, to demonstrate that the amounts paid or payable therefor "are not in excess of the reasonable cost of furnishing such services." The wisdom of imposing such an obligation on the utility is pointed out in *Solar Electric Co. v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 325, 374, 9 A. 2d 447, 473, where it was said: "The desire of public utility management, evidenced by various methods, to secure the highest possible return to the ultimate owners is incompatible with the semi-public nature of the utility business, which the management directs. It therefore follows that the commission

should scrutinize carefully charges by affiliates, as inflated charges to the operating company may be a means to improperly increase the allowable revenue and raise the cost to consumers of the utility service as well as an unwarranted source of profit to the ultimate holding company."[1]

It appears that all construction work for the Telephone Company was performed, without any competitive bids, by the Sordoni Construction Company; such construction work and additions to the Telephone Company's plant amounted, for the years 1948 to 1952 inclusive, to $4,500,000. Yet, except for statements to the effect that one building was constructed at "bare cost" with no profit added, and that the price to the Telephone Company compared favorably with the contract price of similar work performed for the Bell Telephone and other companies, the record contains no evidence to indicate what the cost to the Sordoni Construction Company was, and the Commission made no finding in that regard or whether the profits were reasonable or unreasonable under all the circumstances. The profits made in the case of the other companies is not necessarily the profit allowable in the case of an inter-affiliate transaction, it being the reasonable cost to the affiliate, plus presumably a reasonable profit, which is the statutorily prescribed cost allowed to the utility for the purposes of its rate base. It was said in *Solar Electric Co. v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 325, 373, 9 A.

---

[1] The decision of this court in *Bell Telephone Company of Pennsylvania v. Driscoll,* 343 Pa. 109, 21 A. 2d 912, in no way affects the validity of section 701(c) of the Public Utility Law or its pertinence in these proceedings. That case held no more than that section 702 of the Act, as amended, was unconstitutional in requiring the Commission's approval of a contract between a utility and an affiliated interest as a condition precedent to its validity.

2d 447, 472, 473, that ". . . the burden was on respondent to show that such expenses paid to these affiliates were for services which were reasonable and proper, and that such amounts so paid were not in excess of the reasonable cost of furnishing such services. See Section 701 (a) and (c) of Act of May 28, 1937, P. L. 1053, 66 PS Sec. 1271." It becomes necessary, therefore, to remand the present record to the Commission to receive evidence from the utility, not only as to the reasonable necessity and propriety of all the work involved, but also as to the cost to the affiliate of performing it and the profit made, and to consider whether or not such profit constituted a reasonable return to the affiliate and no more.

The building constructed by the Sordoni Construction Company the cost of which was $552,581, but on which no profit allegedly was charged, was the so-called Dallas General Office Building. The Telephone Company's general office had been formerly located in a building valued at $25,000 and leased by it at an annual rental of $1,667. No evidence was presented to show that the new building was either essential or necessary for the efficient operation of the utility in the public interest. While it is true, of course, that neither the Public Utility Commission nor the courts sit as super boards of directors in judgment of all the expenditures made by a utility (*Bell Telephone Co. of Pennsylvania v. Driscoll,* 343 Pa. 109, 118, 21 A. 2d 912, 916) the statutory duty *is* imposed on the Commission of determining whether or not services performed *by an affiliate* are reasonably necessary and proper, nor does lack of evidence of fraud or sharp practices constitute the positive evidence thus required. In view of the burden of proof thus placed on the utility by section 701 it was error on the part of the Commission to include the cost of this building in the rate

base in the absence of adequate evidence demonstrating the reasonable necessity for its acquisition.

The Telephone Company purchased a large number of motor vehicles from the Sordoni Construction Company which it had previously rented from that Company, the price paid being the depreciated book value as reflected by the Sordoni Construction Company's books of account. There was no evidence to demonstrate the need for or advantage to the utility of such a purchase and the only evidence of the reasonableness of the cost was that the price paid was alleged to compare favorably with the then prevailing OPA price. However, since the OPA prices were computed on the basis of age and model and without regard to the actual condition of the car, it would seem that the probative value of such evidence was, to say the least, doubtful and not sufficient to justify the inclusion of the cost of these vehicles in the rate base. On remand, the Commission should make findings with respect to the actual value to the Telephone Company of the vehicles so transferred and the reasonable necessity for their purchase.

The Telephone Company paid the Public Service Corporation, wholly owned by Senator Sordoni, $36,-000 per annum as a management fee, but there was no proof that any managerial, technical or advisory services were rendered. The Public Service Corporation, which shared office space with the Sordoni Construction Company, owned no property, paid no rent, had no employes and no expenses other than the salaries paid to certain of its officers. Such payments apparently amounted to not more than $10,900 per year, so that the Public Service Corporation would seem to have retained some 70% of its income as profit. Andrew Sordoni, Jr., the unsalaried President of the Telephone Company, received $6,000 a year from the Public Serv-

ice Corporation for what were vaguely termed management or supervisory functions.[2]   In the absence of evidence affording a justification of the payment of the fee to the Public Service Corporation,—something to show that the Telephone Company actually receives fair value for such payment and that the Public Service Corporation receives only a reasonable profit,—the fee in question should not be allowed as an item of operating expense.

The Telephone Company leases space in the Montrose Inn, a Sordoni enterprise, at a yearly rental of $3,000.   After the lease was executed it paid the Sordoni Construction Company $34,000 for additions and alterations to the demised premises.   The lease expense was approved by the Commission and the $34,000 item permitted to be included in the rate base and amortized over the ten-year life of the lease.   What the value is of the entire building, what part of that value is represented by the leased space, what the maintenance expenses of the Inn were, what profit was made by it under the lease, and what it would have cost the Telephone Company to rent similar facilities, if available, from a non-affiliate in that area,—all these facts were not shown in the evidence, lacking which it could not be determined whether the payment to the Inn was properly allowed as an item of expense and the cost of the alterations as a permissible inclusion in the rate base.

The Telephone Company paid the Sterling Farms Corporation, which, like the Sordoni Construction Company and the Public Service Corporation, is a Sordoni owned affiliate, the sum of somewhat over $25,-000 in one year for trimming trees along the utility's

---

[2] The Telephone Company pays a manager $12,000 per year for performing the active management duties of the Company.

pole lines, this amount including an item of $3,543.00 for general expenses. There was no adequate evidence to establish the reasonableness or the propriety of such payments or the reasonable cost thereof to the Sterling Farms Corporation.

From what has thus been pointed out, it is obvious that the Commission erred in failing to require the Telephone Company to meet its statutorily imposed burden of establishing the reasonable necessity of its dealings with interrelated companies and the costs and profits to such companies in connection with the property transferred and the services rendered. In affirming the Commission's order the Superior Court stated (p. 25, A. p. 885) that "Except in the case of a few minor items, which are de minimis, appellants are unable to present adequate competent evidence that the plant additions were improper, unnecessary or too costly. The fact that the work was done and a profit made by an affiliate raises only the necessity of close scrutiny of the transactions which, in the absence of evidence, we can presume was given by the Commission." But the *appellants* did not have the burden of proving that the plant additions were improper, unnecessary or too costly; on the contrary, that burden is, by statute, on the utility to demonstrate the reasonable necessity and cost of the installations, and that is the burden which the utility patently failed to carry. There is, of course, a presumption that the Commission closely scrutinized the evidence in regard to the inter-affiliate transactions, but that presumption does not supply the evidence to be scrutinized; here it is manifest that the Commission could not have closely scrutinized the reasonable necessity and cost of the dealings with the affiliates because a reading of the record discloses that the utility offered wholly inadequate evidence in discharge of its burden of proof.

There are matters not directly related to the inter-affiliate dealings which are in question. The Commission allowed $475,000 in the rate base for the utility's inventory of materials and supplies as part of its physical working capital as of September 30, 1952, whereas at the end of 1950 such inventory had amounted to somewhat less than $300,000. Appellants contended, therefore, that the Commission erred in approving this substantial increase in the quantities of equipment because there was an apparent overstocking of telephones, telephone poles, switchboards and other items, and either these materials and supplies were being artificially inflated for the purpose of securing the rate increase or much of them were intended for use, not for current maintenance, but for remote future expansion or in pursuance of a program for conversion from manual to automatic operation of the system.[3] While the Telephone Company showed the actual increase in the number of telephone subscribers in recent years it did not show any adequate relation between the actual expansion and the quantity of materials and supplies retained for expansion purposes so as to enable the Commission to determine the proper allowance in the inventory for materials and supplies stocked for normal expansion.

The Commission found that the fair rate of return for the Telephone Company was 6.8%. A proper rate

---

[3] Stecher, "The Determination of Working Capital in Railroad and Public Utilities Valuations," 39 Yale L. J. 927, 942, points out the impropriety of carrying as working capital materials kept on hand for additions and betterments over and above normal operating standards; such items should be carried as construction work in progress but not yet in service. Cf. *Bluefield Telephone Co. v. Public Service Commission*, 102 W. Va. 296, 135 S.E. 833. See also Note, "An Aspect of Public Utility Rate Valuation: The Working Capital Allowance," 102 U. of Pa. L. Rev. 491.

of return, which of course should be reasonable and not confiscatory, is necessarily to be determined from the evidence adduced. Here the record does not sustain the Commission's finding that a return of 6.8% was reasonable. For example, the Commission found 4.3% as the cost of debt capital whereas the utility actually obtained over $1,000,000 secured by mortgage bonds, at 4%. Similarly the Commission ignored the unique financial position of the utility in finding that its current cost of equity capital was 11%. The evidence to support this figure consisted of various averages based on common stock offerings by independent telephone companies during the three preceding years, but there was nothing to indicate that the condition of those companies was analogous to that of this Telephone Company. As pointed out by President Judge RHODES in his dissenting opinion in the Superior Court (p. 34, A. p. 890): "This privately owned and financially secure company, part of a large system of privately owned enterprises, is in a unique position relative to cost of capital. Its status in this regard is analogous to the Bell system, with which it is connected, rather than the ordinary small, independent telephone company." The error of the Commission lay in its disregard of the utility's history and unusual position, and we agree with President Judge RHODES that the findings of the Commission on the rate of return were so arbitrary, unreasonable, and unsupported by evidence, as to amount to an error of law. Under such circumstances appellate review is not precluded: *Pittsburgh v. Pennsylvania Public Utility Commission*, 370 Pa. 305, 315, 316, 88 A. 2d 59, 64, 65; *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 171 Pa. Superior Ct. 187, 198, 90 A. 2d 607, 613.

Appellants complain that the Commission failed to estimate properly the additional operating revenues which would likely be obtained under the proposed new rates, but, as pointed out by the Superior Court, the Commission's methods of determination were based on actual experience and geared to the known costs and income, and, being reasonably calculated to produce accurate findings, the judgment of the Commission on this point should not be overridden.

In conclusion, it must be emphasized that we are not expressing any opinion or stating any judgment regarding the substantive merits of the questions at issue and to be finally determined, in these proceedings. What we hold is that the evidence presented by the Telephone Company in the present record does not justify the findings of the Commission. Therefore, except insofar as concerns the matter of the estimated operating revenues of the Company, the order of the Superior Court is reversed, and the record is remanded to the Pennsylvania Public Utility Commission for further proceedings not inconsistent with this opinion, and with direction to make proper findings on the basis of such further testimony as may be presented. Costs to be borne by the Commonwealth Telephone Company.

Mr. Justice MUSMANNO dissents.