**UGI UTILITIES, INC., Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1996.

Decided Oct. 28, 1996.

Jon R. Mostel, for Petitioner.

Patricia Krise Burket, Assistant Counsel, for Respondent.

Edward J. Grenier, Jr., for Intervenor, Interstate Energy Company.

Before KELLEY and FLAHERTY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

UGI Utilities, Inc. (UGI) petitions for review of an order of the Pennsylvania Public Utility Commission (PUC) that granted a certificate of public convenience to Interstate Energy Company (IEC) to convert thirty-five miles of its existing eighty-four mile long oil pipeline to dual oil and gas service. We affirm with modifications.

IEC is a wholly-owned subsidiary of Pennsylvania Power and Light Company (PP & L), a public utility serving approximately one million customers. IEC's present pipeline provides oil transportation service to two customers, IEC's parent company, PP & L, at its Martins Creek Steam Electric Generating Station and to Jersey Central Power and Light Company's (JCP & L) oil tank farm located in Lower Saucon Township, Northampton County, Pennsylvania.[1] IEC, prompted by PP & L's desire to convert its plant to gas co-firing, submitted an application for a certificate to transport both oil and gas through its existing pipeline to its two existing customers.

UGI, a public utility serving approximately 225,000 customers, holds certificates to provide gas service in all the municipalities through which the portion of the IEC pipeline that would be converted to dual oil/gas service passes, including the municipality in which PP & L's generating station is located. Although, presently UGI has no facilities in place to serve PP & L's plant, it opposes IEC's application for a certificate because it wants to serve PP & L's needs.

Numerous hearings were held before an Administrative Law Judge (ALJ) and a voluminous record resulted. The ALJ recommended granting IEC's application, but concluded that the PUC lacked jurisdiction to authorize service to JCP & L because the ultimate destination of the fuel may be in New Jersey. Although exceptions were filed by the various parties, the PUC adopted the ALJ's decision, but modified it wherein it concerned the jurisdiction with regard to JCP & L. The PUC held that it was entitled to regulate IEC's gas transportation under the Public Utility Code (Code), 66 Pa.C.S. §§ 101—3316, by virtue of the Hinshaw amendment.[2] UGI filed a petition for review with this Court.

---

1. JCP & L's oil tank farm in Pennsylvania is located across the Delaware River from its Gilbert Electric Generating Station, Holland Township, New Jersey.

2. The Hinshaw amendment is found at Section 1(c) of the Natural Gas Act, 15 U.S.C. § 717(c), and excludes from federal jurisdiction the transportation of natural gas otherwise interstate in character, provided that, among other things, such transportation service is subject to regulation by a state commission.

On appeal,[3] UGI raises the following issues for our review: (1) whether the PUC erred in issuing the certificate of public convenience to IEC when IEC is not a public utility with respect to the transportation of natural gas;[4] (2) whether the PUC's approval of the certificate as applied to JCP & L exceeded its authority because the Natural Gas Act provides exclusive federal jurisdiction; (3) whether the PUC failed to adequately scrutinize the relationship between PP & L and IEC; and (4) whether the PUC's determination concerning the inadequacies of UGI's service was supported by record evidence.

Initially, UGI argues that the PUC is not authorized to grant a certificate of public convenience when the entity making the request is not a public utility. UGI relies on the language of Section 102 of the Code, 66 Pa.C.S. § 102, which defines a "public utility" as:

(1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:

. . . .

(v) Transporting or conveying natural or artificial gas, crude oil, gasoline, or petroleum products ... by pipeline or conduit, *for the public* for compensation. (Emphasis added.)

. . . .

(2) The term "public utility" does not include:

(i) Any person or corporation, not otherwise a public utility, who or which furnishes service only to himself or itself.

Relying on the above-quoted language, UGI contends that the service that IEC intends to provide is not for the public, because in reality the service would be restricted to a single intrastate customer, PP & L, its sole shareholder, and would in essence be a furnishing of service to itself. UGI further contends that by adding a single potential customer, JCP & L,[5] to its application does not transform IEC into a public utility that provides service to the public.

The PUC responds that IEC's status as a public utility was established over twenty years ago in *Bucks County Board of Commissioners v. Pennsylvania Public Utility Commission,* 11 Pa.Cmwlth. 487, 313 A.2d 185 (1973). In *Bucks County,* IEC was seeking a certificate to transport oil for electric generation.[6] One of the issues raised was whether IEC was "a public utility because it is a creation of one or a few privately owned public utilities designed to serve only them." *Id.* at 191, 313 A.2d 185. The court stated:

It is to be noted in this regard that the oil passing through the line will belong to the shippers, not IEC, and that the application seeks and the Certificate confers the right to transport petroleum products limited in use to the supply of oil for electric generation. The record establishes that IEC will establish rates, file tariffs, that it will transport oil, for all shippers, and if necessary, that it will prorate capacity among shippers. It is, under the law, a public utility although, of necessity, it will have few customers.

*Id.* Accordingly, IEC has established that it is a public utility for the purpose of transporting petroleum products. With this fact in mind, IEC proceeded to file for a change

---

3. In reviewing a PUC order this Court must determine whether the findings, order, or determination are supported by substantial evidence, an error of law was committed, or constitutional rights were violated. *Keystone Water Co. v. Pennsylvania Public Utility Commission,* 100 Pa. Cmwlth. 644, 515 A.2d 367 (1986).

4. Both IEC and the PUC contend that UGI waived this first issue because it failed to raise it before the PUC; however, our review of the record reveals that this issue is encompassed in UGI's exceptions to the ALJ's recommended decision and in UGI's brief supporting its excep-

tions. Accordingly, we refuse to consider this issue waived. Pa. R.A.P. 1551.

5. At the time the decision was reached before the PUC, JCP & L had not committed to make use of the gas pipeline service that would be offered by IEC if its application was approved; therefore, UGI contends that IEC's application in reality is a request to serve only PP & L.

6. The pipeline at issue in *Bucks County* is the same pipeline that IEC seeks permission to have adapted here to transport oil and gas.

in service pursuant to Section 1102 of the Code, 66 Pa.C.S. § 1102, which states:

§ 1102. **Enumeration of acts requiring certificate**

(a) General rule.—Upon the application of any public utility and the approval of such application by the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, it shall be lawful:

(1) For any public utility to begin to offer, render, furnish or supply within this Commonwealth service of a different nature or to a different territory than that authorized by:

(i) A certificate of public convenience. . . .

■ UGI contends that IEC must again establish that it is a public utility pursuant to Section 1101 of the Code, 66 Pa.C.S. § 1101,[7] which is a provision applying to the organization of public utilities and the service which they wish to provide. UGI is mistaken in this regard. A comparison of the titles and beginning language of the two sections shows an inapplicability of Section 1101 to the facts here. IEC need not establish that it is a public utility; however, whether its intended gas service is "for the public" as that term is used in Section 102(1)(v) of Code requires some discussion.

■ In *Waltman v. Pennsylvania Public Utility Commission*, 142 Pa.Cmwlth. 44, 596 A.2d 1221, 1223–24 (1991), *aff'd*, 533 Pa. 304, 621 A.2d 994 (1993), the court explained as follows:

According to our Supreme Court, the test for determining whether utility services are being offered 'for the public' is

whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or service to the public, as a class, or *to any limited portion of it*, as

contradistinguished from holding himself out as serving or ready to serve only particular individuals.

*Drexelbrook v. Pennsylvania Public Utility Commission*, 418 Pa. 430, 435–36, 212 A.2d 237, 239 (1965) (emphasis added).

The commission reasoned that there are two factors which are relevant in determining whether a utility service is for the public. These include: (1) whether the service at issue is merely incidental to the service provider's non-utility business relationship with its customers, e.g., Drexelbrook, supra (a landlord supplying utility service only to his tenants is not a public utility); and (2) whether the utility facility was designed and constructed only to serve specific individuals so that the resulting service is not properly considered to be for the public, e.g., *Borough of Ambridge v. Pennsylvania Public Service Commission*, 108 Pa. Superior Ct. 298, 165 A. 47 (1933).

Furthermore, the private or public character of a business does not depend upon the number of persons who actually use the service; rather, the *proper characterization rests upon whether or not the service is available to all members of the public who may require the service. C.E. Dunmire Gas Co., Inc. v. Pennsylvania Public Utility Commission*, 50 Pa.Commonwealth Ct. 600, 413 A.2d 473 (1980). The fact that only a limited number of persons may have occasion to use a utility's service does not make it a private undertaking if the general public has a right to subscribe to such a service. *Masgai v. Pennsylvania Public Service Commission*, 124 Pa. Superior Ct. 370, 188 A. 599 (1936); Borough of Ambridge, supra.

In *Waltman*, the telecommunications services were to be used primarily by individual commercial entities and other common carriers and would not service the public at large.

---

7. Section 1101 of the Code, states that:
§ 1101. **Organization of public utilities and beginning of service**
Upon the application of any proposed public utility and the approval of such application by the commission evidenced by its certificate of public convenience first had and obtained, it shall be lawful for any such proposed public

utility to begin to offer, render, furnish, or supply service within this Commonwealth. The commission's certificate of public convenience granted under the authority of this section shall include a description of the nature of the service and of the territory in which it may be offered, rendered, furnished or supplied.

In affirming the PUC's determination that the applicant was a public utility, the court acknowledged that the applicant fit within the policy of regulating bulk utility services, including gas transportation and WATS long distance service, even though large volume customers were generally the only users of those services. The *Waltman* court concluded that the applicant's proposed service was offered to the public or a limited portion thereof, but "[m]ore importantly, the applicant's services [would] be offered to the public and [were] not held out only to particular individuals." *Id.* 596 A.2d at 1224.

At oral argument, IEC's counsel mentioned that if the Court found that IEC's application, requesting authority to transport gas for the purpose of electric generation to its existing customers, was so narrow in scope as to fail the "for the public" test, IEC would not object to a modification of its request so that the authority it seeks would not be limited to its existing customers. Based upon the *Waltman* opinion's statement of the law and IEC's concession, we so modify the PUC's order. This modification brings IEC's present request for the transportation of gas in line with the original authority granted to it by the PUC for oil pipeline service as affirmed by the court in *Bucks County.* Thus, IEC's certificate of public convenience permits the transportation of gas products for the purpose of electric generation.

■ UGI next argues that the PUC lacked jurisdiction to grant authorization to IEC for the provision of gas service to JCP & L because the Federal Energy Regulatory Commission (FERC) has exclusive jurisdiction over the transportation of natural gas in interstate commerce. Thus, UGI contends that the PUC erred in modifying the ALJ's decision when it held that IEC's proposed transportation of gas was solely intrastate, despite the fact that the ultimate destination of some of the gas may be in New Jersey. UGI also argues that the PUC's reliance on IEC's status under the Hinshaw Amendment is misplaced because the gas IEC would re-

ceive would come from another state and must, therefore, be consumed in Pennsylvania, the receiving state.

The flaw in UGI's argument rests in part upon JCP & L's lack of commitment to date as to whether it will purchase gas transported by IEC through the pipeline at issue. IEC's transfer of gas for PP & L or any other entity engaged in electric generation in Pennsylvania, wherein the gas is ultimately consumed in Pennsylvania, qualifies IEC for Hinshaw Amendment status. If at some future time JCP & L decides to avail itself of IEC's offer, then IEC would be required to seek blanket authority from FERC, which in turn would subject it to FERC jurisdiction. However, this requirement to subject IEC to FERC jurisdiction is presently irrelevant and at best premature and does not impact IEC's Hinshaw Amendment status with regard to the transfer of gas for PP & L or other electric generation entities wherein the gas transported is consumed in Pennsylvania.

■ The third issue raised by UGI concerns the affiliate relationship between IEC and PP & L; UGI alleges that the PUC failed to properly scrutinize the transactions between them. UGI cites a number of cases [8] that call for a heightened scrutiny by the PUC of transactions between a utility and its affiliate. However, as pointed out by the PUC, these cases all arise in the context of the establishment of rates and do not concern an application for a certificate of public convenience. UGI cites no cases requiring such scrutiny when the PUC is reviewing certificate applications.

Specifically, UGI contends that the PUC accepted IEC's assertions that it would provide service at cost, but that the PUC did not make an independent inquiry. UGI supports this allegation by pointing to contrary record evidence and a lack of definiteness in the PUC's findings. The ALJ's findings adopted by the PUC are definite in that nothing was found to be improper, that IEC would provide service at cost and that IEC was financially fit to modify its system.

Moreover, when any contracts or arrangements between IEC and PP & L go into

---

8. *Berner v. Pennsylvania Public Utility Commission,* 177 Pa. Superior Ct. 19, 107 A.2d 882 (1954), *rev'd on other grounds,* 382 Pa. 622, 116 ⁻ A.2d 738 (1955); *Solar Electric Co. v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 325, 9 A.2d 447 (1939).

effect they will be overseen by the PUC. Section 2102 of the Code, 66 Pa.C.S. § 2102. The Code provides for the protection of the public from self-dealing between affiliates by requiring the submission in writing of all contracts. The PUC is then required to give approval only after it has been "established upon investigation that [the contract or arrangement] is reasonable and consistent with the public interest." Section 2102(b) of the Code, 66 Pa.C.S. § 2102(b).[9] Further, pursuant to Section 2102(c) of the Code, 66 Pa.C.S. § 2102(c), amounts paid or payable under contracts deemed excessive or not reasonably necessary or proper by the PUC will be disallowed. This oversight by the PUC of all contracts with affiliates, whether it involves rates or other practices by any public utility, can be raised by the PUC, on its own motion, or upon application or complaint. Section 2106 of the Code, 66 Pa.C.S. § 2106. Clearly, these Code provisions provide for the scrutiny of the relationship between IEC and PP & L on an on-going basis and furnish the authority for the PUC's continued inquiry concerning the protection of the public interest.

■ Lastly, UGI argues that the PUC's decision ignored record evidence when it stated that UGI's present nonexistent service and its proposal to serve PP & L was inadequate. The court in *Metropolitan Edison Co. v. Public Service Commission,* 127 Pa. Superior Ct. 11, 191 A. 678 (1937), suggested a number of pertinent inquiries to determine whether existing service is adequate. These are:

(a) Whether there are any fundamental defects in the service being rendered by the existing utility, due to inadequacy of plant, or distribution system or lack of financial strength. (b) Whether the existing utility has been indifferent to, or neglectful of, its public obligations. (c) Whether the existing utility has failed in any way in its obligation to furnish adequate service at reasonable rates.

*Id.* at 21–22, 191 A. at 683 (footnotes omitted).

A review of the PUC's decision, which incorporated the ALJ's findings, reveals that the PUC addressed UGI's proposals, finding them inadequate and more costly. It found that present service is nonexistent and that UGI's proposals were unresponsive to PP & L's needs, i.e., PP & L would not always receive gas as needed from UGI. The PUC also found that IEC's proposal for three direct connections with three interstate pipelines, as opposed to UGI's proposal of a direct connection with one pipeline, would provide for the best combination of gas price and transportation price. Additionally, the PUC rejected UGI's proposal to charge a pass-through rate of $.05 per Dth for all gas consumed by PP & L, whether delivered through UGI or otherwise, which, in essence, the PUC believed to be nothing more than a metering service.

The PUC considered and compared the evidence provided by the parties, analyzing the quality and quantity of service and the relative costs. Our review of the extensive record shows that the findings are based on substantial evidence.

Accordingly, we affirm the PUC's order granting a certificate of public convenience to IEC with the modifications as outlined in this opinion.

### ORDER

NOW, October 28, 1996, the order of the Pennsylvania Public Utility Commission, entered May 5, 1995, at A–140200, granting a certificate of public convenience to Interstate Energy Company, is affirmed with modifications as outlined in the foregoing opinion.

9. Section 2102(b) of the Code further states that:
   No such contract or arrangement shall receive the commission's approval unless satisfactory proof is submitted to the commission of the cost to the affiliated interest of rendering the services or of furnishing the property or service described herein to the public utility. No proof shall be satisfactory within the meaning

of the foregoing sentence unless it includes the original (or verified copies) of the relevant cost records and other relevant accounts of the affiliated interest, or such abstract thereof or summary taken therefrom as the commission may deem adequate, properly identified and duly authenticated.